***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Hall. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Hall with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the undersigned and that the Industrial Commission has jurisdiction over the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder and nonjoinder of parties.
3. The parties were subject to the North Carolina Workers' Compensation Act at the time of the alleged injury.
4. An employment relationship existed between plaintiff and defendant-employer at the time of the alleged injury.
5. The employer in this case is Dobson Mountaineer Electric and the carrier on the risk for workers' compensation purposes is N.C. Farm Bureau Mutual Insurance Company.
6. Plaintiff alleges that he sustained an injury on or about June 24, 2002.
7. Plaintiff's average weekly wage and resulting compensation rate will be determined from the evidence offered at and subsequent to the hearing.
8. The nature of the alleged injury or occupational disease is both an abdominal and testicular hernia.
9. Plaintiff was paid the entire day of the alleged injury.
10. In addition to the deposition transcripts, the parties stipulated into evidence in this matter a packet of records that included exhibits A through G. These exhibits consist of: A) plaintiff's medical records; B) Plaintiff's Answers to Interrogatories; C) Defendants' Answers to Interrogatories; D) all Industrial Commission forms filed with the Industrial Commission; E) recorded statement of the plaintiff, Aubrey D. Jones, Jr.; F) recorded statement of Paul Eric Dobson; and G) recorded statement of Angela Dobson. Subsequent to the hearing, the parties stipulated into evidence plaintiff's 2002 W-2 wage and tax statement. In addition, the undersigned admitted into evidence the following defendants' exhibits: 1) statement dated September 17, 2002 signed by Angela Dobson and the plaintiff, Aubrey D. Jones, Jr.; and 2) handwritten payroll records for plaintiff from June 7, 2002 through June 30, 2002.
11. The issues to be determined as a result of this hearing are: whether plaintiff sustained a compensable injury by accident arising out of and in the course of his employment on June 24, 2002 pursuant to N.C. Gen. Stat. § 97-2(18), and if so, to what medical and indemnity benefits is he entitled. Defendants have also raised an issue regarding notice pursuant to N.C. Gen. Stat. § 97-22.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, plaintiff was 33 years old and was not working in any capacity. Plaintiff has primarily worked as an electrician since high school.
2. Plaintiff has no prior history of hernias and never had a hernia prior to the date of the injury giving rise to this claim.
3. In late May or early June 2002, defendants hired plaintiff to be a superintendent of electrical crews. While this job entailed supervising the crew, plaintiff also did some of the electrical work himself, which included troubleshooting, pulling wire, terminating devices, and so forth. The electrician job was a physically demanding job. Plaintiff was paid on an hourly basis at $17.80 per hour, and he worked 50 to 55 hours per week. Plaintiff was also provided with a company pickup truck for transportation to and from work.
4. Even though Defendants testified differently, plaintiff provided a W-2 form for his work, which showed that he earned $3,301.90 for the four weeks that he worked there. This results in an average weekly wage of $825.48, yielding a compensation rate of $550.35. This figure does not include any amount for the use of the company truck that was provided for him.
5. On June 24, 2002, plaintiff was working on the Buffalo Wild Wings jobsite in Chapel Hill, North Carolina. Plaintiff and his crew were subcontracting on this site, with the contractor being Horizon Construction. On June 24, 2002, plaintiff and his crew were moving material and supplies out of a room on the jobsite so that another crew could come in and lay carpet in the room.
6. In the course of moving this material, plaintiff picked up two spools of ten-gauge ground wire and moved them from one room to another. Plaintiff testified that one spool was full and the other was about three-quarters full. According to the greater weight of the competent evidence of record, full spools weighed approximately 20 pounds. According to the greater weight of the competent, credible evidence of record, plaintiff lifted two spools that combined weighed 30 to 35 pounds. Upon doing so, plaintiff felt an immediate tearing sensation in his abdominal and groin areas.
7. Plaintiff continued to work the remainder of that day, and in fact worked through July 2, 2002. July 2, 2002 was plaintiff's last day of employment with defendants. Defendants went out of business shortly thereafter, and there is testimony and evidence that defendants owe money to at least one other business.
8. Plaintiff reported later that day to his supervisor, Eric Dobson, that he had hurt himself that day at work. Mr. Dobson does not dispute that plaintiff reported to him that day that he had had an injury; Mr. Dobson contends, however, that plaintiff indicated that there was "no way" the injury could have occurred at work. For reasons set forth more fully below, Mr. Dobson's testimony with respect to plaintiff's reporting of the incident is not deemed credible.
9. Plaintiff's testimony that he suffered a work-related hernia was corroborated by the testimony of John K. Lundi, Jr., who works for a staffing service and who knew plaintiff because he had sent electricians to work on the Buffalo Wild Wings jobsite under plaintiff's supervision. Mr. Lundi testified, in testimony deemed herein to be credible, that he knew from either plaintiff himself or from another worker at the site that plaintiff had injured himself, with the injury being a hernia. When he later saw plaintiff on the jobsite at some time prior to July 2, 2002, plaintiff's last day of employment, plaintiff told him that he had suffered a hernia while on the job. Mr. Lundi's testimony is found to be credible for the following reason: he testified that he knew that plaintiff had suffered from a work-related hernia despite the fact that if plaintiff collects money from Mr. Dobson, Mr. Lundi is less likely to collect the large amount of money that he is owed from Mr. Dobson.
10. Art Cardin, the supervisor for Horizon Construction, testified that he was unaware of any work-related hernia suffered by plaintiff on the job on June 24, 2002. Instead, Mr. Cardin testified that plaintiff reported to work one morning with complaints of back pain. Any complaints on the part of plaintiff of back pain are completely irrelevant to this claim, as plaintiff's claimed injuries here are hernias to his abdomen and groin. However, it is significant that Mr. Cardin corroborated plaintiff's testimony that there were materials on the jobsite that day that he requested be moved to make way for other work to be completed.
11. Plaintiff worked through July 2, 2002, at which time he resigned his employment because several of his past payroll checks from defendants had bounced due to insufficient funds. As plaintiff was not being compensated for his work, plaintiff was constructively terminated due to the circumstances. Defendants went out of business on or about July 4, 2002.
12. Plaintiff first reported to a physician for his hernias on July 10, 2002, when he was seen by Dr. Covington, a general surgeon. Plaintiff saw Dr. Covington by way of his former girlfriend, who worked in the medical field. Plaintiff did not see a family physician prior to reporting to Dr. Covington, as he did not have health insurance and did not want to pay for an examination that would then refer him on to a surgeon.
13. Dr. Covington diagnosed the Plaintiff with two small to moderate hernias, a ventral supraumbilical (abdominal) hernia and a right inguinal (groin) hernia. Dr. Covington testified that he would not be able to tell until surgery whether these hernias were congenital or caused by lifting or straining. While Dr. Covington testified that it would be unlikely for a single lift of 10 to 20 pounds to cause two hernias to spontaneously develop, he also testified, in an opinion found to be credible and accepted as fact, that to a reasonable degree of medical certainty, it was a reasonable clinical scenario that plaintiff developed the hernias while lifting 35 pounds of spooled wire at work on June 24, 2002.
14. Dr. Covington has testified, in an opinion found to be credible and accepted as fact, that plaintiff needs to have a surgical repair of the two hernias, and that failure to do so may result in further damage to plaintiff. Dr. Covington in fact scheduled the surgical procedure for July 24, 2002; however, plaintiff was unable to undergo the surgery due to financial reasons and lack of medical insurance. As of the date of the hearing in the matter, plaintiff had not undergone the surgical repair of his hernias.
15. By note dated August 21, 2002, Dr. Covington restricted plaintiff from lifting more than 30 pounds until the surgery has been performed and a post-operative release has been done for full, unrestricted work. As of the date of his deposition testimony, plaintiff remained under the work restrictions, as he had not yet undergone the surgical repair because of financial reasons.
16. Even if plaintiff had not voluntarily resigned his employment on or about July 2, 2002 with defendants, he was unable to perform his duties as an electrician and crew superintendent for defendants or in any other electrician capacity.
17. While plaintiff has looked for employment after his resignation from defendants, he has been unable to locate suitable employment, as he is currently unable to perform the only job he has ever held, that of an electrician.
18. Plaintiff received a period of unemployment benefits at the weekly rate of $179.00 for a total of approximately $3,300.00.
19. Plaintiff is unable to return to work as an electrician until such time as he undergoes the necessary surgical hernia repair and is thereafter released. A surgical repair of the hernias is reasonably necessary in this case to affect a cure, give relief, and to lessen the period of plaintiff's disability.
20. Plaintiff is found to be a credible witness. This finding is based upon his testimony and demeanor at hearing. Plaintiff's testimony about the onset of the hernias is found to be credible, particularly since it was corroborated both by the testimony of lay witness, John Lundi, and also by the medical records, which indicate that plaintiff's hernia developed after heavy lifting at work. The fact that plaintiff was embarrassed by testicular swelling and not having had medical training to understand what was going on and why, explain any delay by plaintiff in reporting the incident as being work related.
21. Prior to June 24, 2002, plaintiff had no hernias. These two hernias appeared suddenly and immediately followed an accident that occurred as the direct result of a specific traumatic incident of the work assigned.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident as a direct result of a specific traumatic incident on June 24, 2002 when he lifted spools of wire at work and immediately thereafter developed two hernias. N.C. Gen. Stat. §§ 97-2(6) and 97-2(18).
2. As a result of these hernias, plaintiff has been temporarily totally disabled from July 3, 2002, the date on which he was constructively terminated, and he remains temporarily totally disabled as of the date of the filing of this Opinion and Award. N.C. Gen. Stat. § 97-29.
3. Plaintiff average weekly wage as of June 24, 2002 was $825.48, yielding a compensation rate of $550.35. N.C. Gen. Stat. § 97-2(5).
4. As a result of his compensable hernias, plaintiff is entitled to medical compensation that is reasonably necessary to affect a cure, give relief, or lessen the period of his disability, including surgical repair of the hernias. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
5. Defendants are entitled to a credit for unemployment benefits received by Plaintiff. N.C. Gen. Stat. § 97-42.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendants shall pay to plaintiff temporary total disability benefits at a weekly rate of $550.35, beginning July 10, 2002 and continuing until such time as plaintiff returns to work or until further Order of the Industrial Commission. Said compensation that has accrued shall be paid in a lump sum.
2. Plaintiff's counsel is entitled to a reasonable attorney's fee of 25 percent of the compensation paid herein to plaintiff. Accordingly, of the lump sum amount, Defendants shall forward one-fourth directly to plaintiff's counsel. Thereafter, plaintiff's counsel is entitled to every fourth compensation check.
3. Defendants shall provide plaintiff with all related medical treatment that is reasonably necessary to affect a cure, give relief, or lessen the period of disability, including surgical repair of the hernias.
4. Defendants shall pay the costs.
This the ___ day of ___, 2004.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER